IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| ANDREWS & STAFF FORCE, INC., | ) | |
| | ) | |
| Plaintiff, | ) | No. 13 C 0181 |
| v. | ) | |
| | ) | Judge Robert W. Gettleman |
| SYSTEMAX, INC., n/k/a Global Computer | ) | |
| Supplies, Inc. | ) | |
| | ) | |
| Defendant. | ) | |

**MEMORANDUM OPINION AND ORDER**

Plaintiff Andrews & Staff Force, Inc. sued defendant Systemax, Inc. in the Circuit Court of Cook County, Illinois, seeking reimbursement under 820 ILCS 305/1(a)(4) for workers' compensation benefits it paid to employees it had "loaned" to defendant. After defendant removed the case to this court plaintiff filed an amended complaint adding a claim for breach of contract. After the parties conducted limited discovery, defendant moved for summary judgment on both counts, arguing that an indemnification agreement entered into by the parties in 2007 bars all of plaintiff's claims. Plaintiff has filed a cross-motion for summary judgment on Count I only, arguing that the indemnification agreement does not cover its claims. For the reasons discussed below, defendant's motion is granted and plaintiff's cross-motion is denied.

**BACKGROUND**[1]

Plaintiff is an Illinois corporation that provides temporary employees to its clients. Defendant is a retailer that sells brand name and private label products, including computers, consumer electronics and industrial products. Commencing in 2007 defendant contacted

---

[1] The background facts are taken from a joint statement of facts submitted by the parties in support of their motions for summary judgment.

plaintiff, asking it to recruit seasonal warehouse workers (the "loaned employees") for temporary employment at defendant's distribution facility in Naperville, Illinois. In July 2007 defendant sent plaintiff an indemnification agreement which plaintiff signed without notification. That agreement provides in relevant part:

> Contractor [plaintiff] shall be solely responsible and liable for and shall fully defend, indemnify, and hold harmless Principal [defendant] against any and all claims, liabilities, demands, actions, proceedings, judgments or payments and expenses of any nature whatsoever asserted against Principal [defendant] by Contractor's [plaintiff's] . . . employees and/or all third parties who may bring claim for bodily injury, personal injury, or damage to property as a result of or incidental to the work performed by the contractor [plaintiff]. Contractor [plaintiff] agrees to assume on behalf of Principal [defendant] the defense of any action which may be brought against Principal [defendant] and to pay all costs and expenses of what ever nature resulting therefrom and to pay on behalf of Principal [defendant] upon their demand the amount of any judgment which may be recovered or entered against Principal [defendant] in any such action.
>
> Contractor [plaintiff] shall indemnify and hold harmless Principal [defendant] for any claims arising out of the failure of Principal [plaintiff], its agents, or employees to inspect or supervise the work, including failure to call attention to improper construction and/or operations.

Plaintiff began supplying loaned employees to defendant in 2007. Two years later, on May 28, 2009, the parties entered into a Temporary Services Agreement (the "TSA") under which plaintiff agreed to provide temporary and temporary to-hire services for warehouse positions at defendant's facility. Under the TSA, plaintiff was to recruit, interview, select and hire temporary employees for job assignments, to recommend candidates qualified to perform the job requirements at defendant's facility, and to oversee the temporary employees as outlined in plaintiff's on-site management proposal. All temporary employees (loaned employees) assigned to defendant remained employees of plaintiff and were paid wages by plaintiff.

Between 2007 and 2012 approximately 121 of the loaned employees provided by plaintiff to defendant were injured while working at defendant's facility. The injured employees filed applications for Adjustment of Claim with the Illinois Workers' Compensation Commission. As the employer of these workers, plaintiff allegedly paid in excess of $1.6 million to resolve the claims. During the course of its relationship with defendant, plaintiff submitted each individual loaned employee's claim to plaintiff's own workers' compensation insurance carrier. Plaintiff did not make any demand for reimbursement from defendant for the workers' compensation benefits plaintiff paid to any injured loaned employee until after the parties terminated their relationship in 2012. When plaintiff did seek reimbursement from defendant in 2012, defendant refused to pay based on the indemnification agreement.

## DISCUSSION

The parties have filed cross-motions for summary on Count I, and defendant also seeks summary judgment on Count II. Summary judgment is appropriate where there is no genuine issue of material fact and the movant is entitled to judgment as a matter of law. Fed. R. Civ. P. 56. The movant bears the burden of establishing both elements, Becker v. Tennenbaum-Hill Associates, Inc., 914 F.2d 107, 110 (7th Cir. 1990), and all reasonable inferences are drawn in favor of the non-movant. Jones v. Illinois Bell Tele. Co.. 2013 WL 5781814 at *3 (N.D. Ill. Oct. 24, 2013) (citing Fisher v. Transco Services-Milwaukee, Inc., 979 F.2d 1239, 1242 (7th Cir. 1992)). If the movant satisfies its burden, then the non-movant must set forth specific facts showing there is a genuine issue for trial. Nitz v. Craig, 2013 WL 593851 at *2 (N.D. Ill. Feb. 12, 2013). In doing so, the movant cannot simply show there is some metaphysical doubt as to the material facts. Pignato v. Giviaudan Flavors, Corp., 2013 WL 995157 at *2 (N.D. Ill.

3

March 13, 2013) (citing Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 472 U.S. 574, 586 (1986)).

In Count I, plaintiff seeks reimbursement for the approximate $1.6 million in workers' compensation benefits it has paid to the injured loaned employees. The count is brought under Section 1(a)(4) of the Illinois Workers' Compensation Act ("IWCA"), 820 ILCS 305/1(a)(4) which provides (emphasis added):

> Where an employer operating under and subject to the provisions of this Act loans an employee to another such employer and such loaned employee sustains a compensable accidental injury in the employment of such borrowing employer and where such borrowing employer does not provide or pay the benefits or payments due such injured employee, such loaning employer is liable to provider to pay all benefits or payments due such injured employee under this Act and as to such employee the liability of such loaning and borrowing employers is joint and several, <u>provided that such loaning employer is in the absence of agreement to the contrary</u> entitled to receive from such borrowing employer full reimbursement for all sums paid or incurred pursuant to this paragraph together with reasonable attorney's fees and expenses . . ..

The purpose of the IWCA is to provide financial protection to workers who sustain accidental injuries arising out of their employment. It contains a comprehensive scheme to compensate employees for impaired earning capacity resulting from work-related injuries. Boelkes v. Harlem Consol. School Dist. No. 122, 363 Ill.App.3d 551, 554-55 (2d Dist. 2006). Section 1(a)(4) of the Act establishes a system of joint and several liability for workers' compensation claims between loaning and borrowing employers where "the borrowing employer is primarily liable and the loaning employer is secondarily liable, the later being required to pay only when the borrowing employer fails to do so, and is then entitled to reimbursement from the borrowing employer." Surestaff, Inc. v. Azteca Foods, Inc., 374 Ill.App.3d 625, 628 (1st Dist. 2007). That right to reimbursement by a loaning employer such as plaintiff, "may be waived by

4

an agreement between the respective employers." Id. Such an agreement is identified in the statute as an "agreement to the contrary."

The sole issue in Count I is whether the indemnity agreement constitutes an agreement to the contrary as used in the Act. Any agreement by which the loaning employer agrees to pay workers' compensation benefits to injured loaned employees qualifies. Surestaff, 374 Ill.App.3d at 629. The agreement need not mention the IWCA, waiver, or right to reimbursement. Id. It need not even be in writing. Id.; Corrugated Metals, Inc. v. Indus. Comm'n., 184 Ill.App.3d 549, 555 (1st Dist. 1989). No magic language is needed so long as the agreement covers the borrowing employer's "liability arising from the injuries sustained by [the loaning employer's] employee . . . during the course of his employment." Fort Dearborn Cartage Co. v. Rooks Transfer, 136 Ill.App.3d 371, 375 (1st Dist. 1985). Thus, Fort Dearborn held that an agreement that required the plaintiff to indemnify the defendant "from and against all loss, damages, costs and expenses incurred on account of personal injury resulting from any act or omissions on the part of plaintiff's employees providing services under the contract," unequivocally covered the defendant's liability arising from a loaned employee's injuries sustained during the course of his employment.

Plaintiff argues that the instant indemnity agreement does not extend to claims made by "contractors" such as plaintiff. Plaintiff admits, however, that the indemnity agreement obligates plaintiff to indemnify defendant for "claims asserted against [defendant] by [plaintiff's] employees." The workers' compensation benefits paid by plaintiff are payments made to injured loaned employees in satisfaction of their personal injury claims against defendant. Thus, the fact that no loaned employee was required to sue defendant is of no import. The indemnity

agreement provides that it covers all claims "asserted against [defendant] by [plaintiff's] employees who may bring claim for bodily injury, personal injury or damage to property as a result of or incidental to the work performed by [plaintiff]. This language undoubtably shifts liability to plaintiff when its employees have a claim for bodily injury. Under Fort Dearborn it is enough to constitute an "agreement to the contrary."

Next, plaintiff argues that the indemnity agreement extends only to claims arising from or incidental to work performed by plaintiff, not its loaned employees. Plaintiff is a corporate entity, however, and can "work" only through its employees. And there is no doubt that under the TSA, "temporaries assigned to [defendant] are employees of [plaintiff]."

Moreover, to interpret the contract as suggested by plaintiff would render the entire agreement meaningless. According to plaintiff, the only work it performed was to recruit, interview and hire temporary workers, all of which is done by plaintiff's administrative employees, not loaned employees. Yet, plaintiff is unable to explain how any of its administrative employees could incur an injury while engaged in recruiting, interviewing or hiring, that would result in a claim against defendant. Plaintiff's reading of the contract is strained and nonsensical.

Finally, plaintiff argues that even if the contract seems by its language to constitute an "agreement to the contrary," the parties' indemnification agreements with other businesses demonstrate the limited scope of the instant agreement. Under the Doctrine of Extrinsic Ambiguity, plaintiff is allowed to present objective evidence "to show the extrinsic ambiguity even though the contract appears clear on its face." Commonwealth Ins. Co. v. Titan Tire Corp., 398 F.3d 879, 885 (7th Cir. 2004). Those other agreements, however, do not help plaintiff. Both

plaintiff's and defendant's agreements with other businesses usually included broader language than the instant agreement. In fact, they often explicitly waive the right to reimbursement for workers' compensation claims. This fact, however, does not indicate that the instant agreement's narrower language was intended to reach a different result without a reasonable explanation for why the parties would have deviated from their normal practice. Plaintiff has not offered any such explanation. Both parties' long established practice of waiving a right to reimbursement makes it more, rather than less, likely that they intended to do so in the instant agreement. Thus, the extrinsic evidence weakens rather than strengthens plaintiff's case. Consequently, the court concludes that the indemnity agreement constitutes an "agreement to the contrary" as used in the IWC. Defendant is entitled to summary judgment on Count I.

In Count II, plaintiff alleges a breach of contract claim based on defendant's agreement to provide a safe work environment and proper training. Plaintiff claims damages based on its payment of workers' compensation benefits to the loaned employees. As defendant notes, the indemnity agreement covers these damages because plaintiff is "solely responsible and liable" for injuries suffered by its employees while working for the defendant. The indemnity agreement even specifically states that plaintiff shall indemnify defendant for "any claims arising out of the failure of [defendant], its agents or employees to inspect or supervise the work, including failure to call attention to improper construction and/or operations." Plaintiff cannot escape its obligations under the indemnity agreement by pleading its workers' compensation damages as a breach of contract claim. Further, plaintiff provided no response in its briefs to defendant's motion on Count II. The absence of opposition is, in an of itself, reason to grant

defendant's motion with respect to Count II. See <u>Weinstein v. Schwartz</u>, 422 F.3d 476, 477 n.1 (7th Cir. 2005).

## **CONCLUSION**

For the reasons described above, plaintiff's motion for summary judgment on Count I is denied, defendant's motion for summary judgment on Counts I and II is granted. Judgment is entered for defendant.

**ENTER:** May 12, 2014

_____
**Robert W. Gettleman
United States District Judge**